IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-00026-PAB-BNB

LESLIE KRZYCKI,

    Plaintiff,

v.

HEALTHONE OF DENVER, INC.,

    Defendant.

_____

# ORDER
_____

This matter is before the Court on the motion for summary judgment [Docket No. 26] filed by defendant HealthONE of Denver, Inc. ("HealthONE")[1] on October 12, 2012. The Court's jurisdiction is based on 28 U.S.C. § 1331.

## I. BACKGROUND

The following facts are undisputed unless otherwise indicated. HealthONE employed plaintiff Leslie Krzycki as a surgical technician at the Denver Mid-Town Surgery Center, Ltd. facility ("Mid-Town") from May 2000 through July 30, 2010. Docket No. 26 at 2, 4; Docket No. 27 at 1. Sometime in or around 2005, defendant promoted plaintiff to the position of Lead Surgical Technician. Docket No. 26 at 2-3; Docket No. 26-1 at 7-8 (Krzycki dep., at 32, l.17 to 33, l.5). Plaintiff received positive performance evaluations during her employment, scoring between 17 and 21 points–out of a

---

[1] The motion was jointly filed with Denver Mid-Town Surgery Center, Ltd., a defendant who was dismissed from the case on November 13, 2012. See Docket Nos. 29, 30.

possible total of 21–in assessments of her interactions with patients and colleagues. Docket No. 27-8 at 5, 13, 21, 29, 37, 45, 53, 61, 69.  Plaintiff did not receive written disciplinary or corrective action at any time.  Docket No. 26 at 3.

On October 13, 2009, plaintiff witnessed a non-employee anesthesiologist at the Mid-Town facility sexually harassing plaintiff's boyfriend and co-worker, Robert "David" Record, against his will.  Docket No. 26 at 3, 6; Docket No. 27 at 3.  That morning, plaintiff accompanied Mr. Record in reporting the incident to Lisa Foster, the Mid-Town Administrator.  Docket No. 26 at 3; Docket No. 27 at 3.  Plaintiff states that she also reported the incident to Sofia DeAngelis, the Clinical Operations Director and plaintiff's direct supervisor.  Docket No. 26 at 3; Docket No. 26-1 at 29-30 (Krzycki dep., at 95, l.20 and 98, l.1).

On October 28, 2009, plaintiff prepared a declaration on behalf of Mr. Record regarding the incident that she mailed to Mr. Record's attorney.  Docket No. 26-1 at 20-21 (Krzycki dep., at 61, l.4 to 62, l.17).  Plaintiff did not tell anyone else at work about the declaration, apart from Mr. Record.  Docket No. 26-1 at 22 (Krzycki dep., at 64, ll.1-5).

In November 2009, Ms. Foster and Nicole Bauer, defendant's human resources manager, met with plaintiff to discuss plaintiff's practice of telling inappropriate jokes at work about the October 2009 incident, as well as her practice of making inappropriate statements in the operating room.  Docket No. 26 at 4; Docket No. 26-1 at 34-35 (Krzycki dep., at 115, l.7 to 116, l.14); Docket No. 27 at 13.  Plaintiff acknowledged that she engaged in "dirty talk" in the operating room, explaining that it was in keeping with "the culture" and that "you don't want to be seen as the standout, or the one who

doesn't want to have fun." Docket No. 26-1 at 35 (Krzycki dep., at 116, ll.4-14). Ms. Foster and Ms. Bauer also informed plaintiff that some staff members found her to be intimidating at times. Docket No. 26 at 4; Docket No. 26-1 at 36 (Krzycki dep., at 126, ll.12-17). Plaintiff stated that, after the November 2009 meeting, she was aware of the need to alter her behavior, noting: "was there still some joking?  Yes, because I didn't want to be the outsider.  Was there joking like there was before?  No." Docket No. 26-1 at 38-39 (Krzycki dep., at 133, l.21 to 134, l.3).

In November 2009, Ms. Foster asked plaintiff for additional information regarding the October 2009 incident. Docket No. 26-4 at 13 (Foster dep., at 33, ll.7-15). Plaintiff declined to answer on the ground that Mr. Record's attorney had advised her not to. *Id.*; Docket No. 27 at 4. At the time, Ms. Foster did not know of Mr. Record's lawsuit, although she was aware of the potential for litigation. Docket No. 26-4 at 12 (Foster dep., at 32, ll.20-22). Ms. Foster responded by stating that plaintiff had "chosen sides." Docket No. 26-4 at 13 (Foster dep., at 33, ll.2-5) ("We had a conversation and her response caused me to say she had chosen sides."). Ms. Foster then encouraged plaintiff to consider the needs of her children in making any decisions related to the incident. Docket No. 27-4 at 9 (Foster dep., at 37, ll.17-25); Docket No. 27 at 7-8.

On February 15, 2010, Mr. Record filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against HealthONE based upon the October 13, 2009 incident. Docket No. 27-9 at 2. Mr. Record stated that plaintiff witnessed the incident in question. Docket No. 27-9 at 3. Defendant was informed of the charge on March 3, 2010 and responded on April 30, 2010. Docket No. 27-10 at 2; Docket No. 27-11 at 2. Ms. Bauer was involved in responding to the charge of

discrimination on behalf of defendant.  Docket No. 27-2 at 5 (Bauer dep., at 109, ll.16-19).

In late spring 2010, plaintiff became aware that she had been scheduled for fewer "floating" shifts than she had been previously, which left her less time to complete certain administrative tasks.  Docket No. 26-1 at 41 (Krzycki dep., at 136, ll.1-6).

From the end of June 2010 through late July 2010, Ms. Bauer received eight verbal complaints regarding plaintiff's behavior from other individuals who worked at Mid-Town.  Docket No. 26-9.  Ms. Bauer typed summaries of these complaints, seven of which are signed by the employees who made them.  *Id*.  Ms. Bauer subsequently discussed the complaints with Ms. Foster; David Patrick Roy, the Vice President of operations for the surgery center division; and Rebecca Adix, a member of a consultative team that collaborated with human resources to review terminations.  Docket No. 26-5 at 34 (Bauer dep., at 189, ll.12-16); Docket No. 26-11 at 3-4 (Adix dep., at 13, l.8 to 14, l.6).  Mr. Roy made the decision to terminate plaintiff's employment.  Docket No. 26-5 at 34 (Bauer dep., at 189, ll.23-25); Docket No. 26-10 at 4-5 (Roy dep., at 32, l.13 to 33, l.8); *see also* Docket No. 27 at 16.

On July 30, 2010, defendant terminated plaintiff's employment.  Docket No. 26 at 4; Docket No. 27 at 9.  Defendant informed plaintiff that her termination was based on a finding that she "bullies, intimidates and harasses staff members," which "creat[ed] a disruptive work environment."  Docket No. 26-6.  On December 10, 2010, Mr. Record served his initial disclosures in his EEOC matter, including a copy of plaintiff's declaration, on defendant.  Docket No. 26-8 at 2, ¶¶ 4-5.

On January 4, 2012, plaintiff brought this case alleging that defendant terminated

4

her for engaging in protected opposition to sexual harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), *see* 42 U.S.C. 2000e-3, and the Colorado Anti-Discrimination Act ("CADA"), *see* Colo. Rev. Stat. § 24-34-402(1)(e)(IV).  Docket No. 1 at 4-6, ¶¶ 25-35.  Plaintiff seeks back-pay, back benefits, front-pay, emotional distress damages, punitive damages, interest, attorney's fees, costs, and a declaration that defendant violated Title VII and CADA.  Docket No. 1 at 6, ¶¶ A-H.  Defendant moves for summary judgment on both of plaintiff's claims.  Docket No. 26.

## II. STANDARD OF REVIEW

According to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  In pursuing summary judgment, the moving party generally bears the initial burden of showing the absence of a genuine dispute concerning a material fact in the case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  However, "[w]hen, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001).

"Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of Colorado, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing

*Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* FED. R. CIV. P. 56(e). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. However, to be clear, "it is not the party opposing summary judgment that has the burden of justifying its claim; the movant must establish the lack of merit." *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1110 (10th Cir. 2009).

Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). "A mere scintilla of evidence will not suffice to allow a nonmoving party to survive summary judgment." *Smith v. Rail Link, Inc.*, 697 F.3d 1304, 1309 n.2 (10th Cir. 2012).

### III. DISCUSSION

#### A. Title VII

Title VII bars discrimination on the basis that an employee has "opposed any practice made an unlawful employment practice" by Title VII or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or

hearing" under Title VII.  42 U.S.C. § 2000e-3(a); *see also* Colo. Rev. Stat. § 24-34-402(1)(e)(IV) (declaring it unlawful to "discriminate against any person because such person has opposed any practice made a discriminatory or an unfair employment practice by this part 4, . . . or because [she] has testified, assisted, or participated in any manner in an investigation, proceeding, or hearing conducted pursuant to parts 3 and 4").

To succeed on a claim for retaliatory termination, a plaintiff must prove that "her protected activity was a but-for cause of the alleged adverse action by the employer." *University of Texas Southwestern Med. Ctr. v. Nassar*, --- U.S. ----, 133 S. Ct. 2517, 2534 (2013).  A plaintiff may rely on the *McDonnell Douglas* framework to prove retaliation indirectly, in which case a plaintiff must first show that (1) she engaged in protected opposition to discrimination; (2) she suffered an employment action that a reasonable employee would find materially adverse; and (3) there was a causal connection between the protected activity and the adverse action.  *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012).  After plaintiff has made this showing, the defendant must come forward with a legitimate, non-discriminatory or non-retaliatory reason for the adverse employment action.  *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008).  If the defendant has satisfied this burden of production, plaintiff must show that defendant's proffered rationale is pretextual.  *Id.*; *see Bishop v. Ohio Dep't of Rehabilitation & Corr.*, 2013 WL 3388481, at *9 (6th Cir. July 9, 2013) (discussing the but-for causation standard announced in *Nasser*, 133 S. Ct. at 2534, in its analysis of pretext).

The Tenth Circuit has recognized the overlap between a court's assessment of a plaintiff's prima facie case and its assessment of a plaintiff's showing of pretext: "[s]ome cases treat circumstances suggestive of discrimination as an element of a prima facie case; other cases treat the surrounding circumstances as part of the analytically subsequent inquiry into the employer's stated reason for the challenged action and the plaintiff's opposing demonstration of pretext." *E.E.O.C. v. PVNF, LLC*, 487 F.3d 790, 800 n. 5 (10th Cir. 2007) (internal citations and quotations omitted). Regardless of how a court characterizes its inquiry, if it "correctly concludes that the evidence of discrimination/pretext fails as a matter of law, summary judgment for the defendant is the proper result." *Id*.

Plaintiff relies on indirect, rather than direct, evidence in support of her claims.[2] Docket No. 27 at 3, ¶ A.1. However, even assuming plaintiff can establish a prima facie case, she has not produced sufficient evidence to raise a genuine dispute as to whether defendant's stated reason for her termination was pretextual.[3] The Court will begin by

---

[2] Plaintiff does not argue that Ms. Foster's statement in November 2009 constitutes direct evidence of retaliation. *See generally* Docket No. 27. The Court notes that this argument would be unavailing in any event, as the length of time between this statement and plaintiff's termination (eight months) precludes an inference that the two events were related. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013) ("discriminatory statements do not qualify as direct evidence if the context or timing of the statements is not closely linked to the adverse decision").

[3] Plaintiff also asserts that defendant took adverse action against her by assigning her to fewer "float" shifts, beginning in November 2009. Docket No. 27 at 5-6. Plaintiff argues that this action was adverse because floating shifts provided her time in which to complete additional responsibilities related to being a lead technician, such as making telephone calls and coordinating with vendors. Docket No. 27-5 at 19-20 (Krzycki dep., at 144, ll.12-22). "An adverse employment action includes acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing

analyzing plaintiff's claims under the rubric of pretext, instead of determining whether she has established a prima facie case. *See Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 n. 5 (10th Cir. 2005).

A plaintiff may show pretext by demonstrating that there are "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in an employer's stated reasons such that "a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951-52 (3d Cir. 1996) (internal quotation marks omitted). The Court's role is to prevent and redress employment discrimination, and not to act as a "'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (quoting *Jones v. Barnhart,* 349 F.3d 1260, 1267 (10th Cir. 2004)); *see also Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1119 (10th Cir. 2007) ("Thus, we consider the facts as they appeared to the person making the decision, and we do not second-guess the employer's decision even if it seems in hindsight that the action taken constituted poor business judgment.").

---

a significant change in benefits." *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1268 (10th Cir. 2005) (quotation marks, alteration, and citations omitted). On the other hand, "a mere inconvenience or an alteration of job responsibilities" is not an adverse employment action. *Sanchez v. Denver Public. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998) (internal citations omitted) (lateral transfer to different school with longer commute was not materially adverse action taken against teacher). Plaintiff has not produced any evidence that the alleged alteration in her schedule was more than "an inconvenience" or "alteration" in her responsibilities. *See id*. Accordingly, the Court will not consider this action in ruling on defendant's motion for summary judgment.

Defendant states that plaintiff was terminated for "her actions and behaviors," which included "bullying, intimidating, [and] causing an uncomfortable work environment for folks that worked with her." Docket No. 26-5 at 2-3 (Bauer dep., at 8, ll.21-22 and 9, ll.2-6). Plaintiff does not dispute that, "[t]o the extent such allegations would constitute violations of HealthONE's policies, they constitute legitimate reasons" for termination of plaintiff. Docket No. 27 at 10. However, plaintiff argues that defendant's stated reason is pretextual because she did not receive any written discipline prior to her termination; defendant did not comply with its personnel policy by reviewing the employees' complaints thoroughly before terminating her; defendant has exaggerated the seriousness of the employees' complaints about her behavior; and plaintiff received positive evaluations, including high marks on interpersonal interaction, through March 2010. Docket No. 27 at 10-14.

First, the absence of previous written feedback does not give rise to an inference of pretext, *see Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1228-29 (10th Cir. 2012), as there is no requirement that employees receive a certain volume of written feedback. *Id*. Moreover, plaintiff does not dispute that she was verbally warned in November 2009 about making inappropriate jokes and taking other actions to intimidate staff and that she attempted to improve her behavior. *See* Docket No. 26-1 at 34 (Krzycki dep., at 115, ll.1-20). There is no indication that defendant's policy required further documentation. *See* Docket No. 26-12.

Second, defendant's Discipline, Counseling and Corrective Action policy provides that an employee may be terminated when she "commits a serious offence and [her] employment is not in the best interest of the organization, regardless of

previous disciplinary problems or actions." Docket No. 26-12 at 1. It further provides that "[pr]ior to any termination, the Director of Human Resources or designee must be consulted and the circumstances thoroughly reviewed." *Id.* Plaintiff argues that defendant did not comply with this policy because it did not attempt to determine the veracity of the complaints against her. Docket No. 27 at 13. This assertion is unsupported by the record. Ms. Bauer interviewed each employee who came forward with a complaint, compiled the notes of the interview, obtained the employee's signature attesting to the accuracy of the document in all cases but one, and brought these complaints to Ms. Foster, Mr. Roy, and Ms. Adix, who deliberated before Mr. Roy made a final determination. Docket No. 26-9; Docket No. 26-5 at 34 (Bauer dep., at 189, ll.12-16); *see also* Docket No. 27 at 16 (recognizing the high "degree of consultation among administrators about Plaintiff's termination"). The fact that the decision makers did not specifically solicit a response or explanation from plaintiff does not demonstrate a failure to comply with defendant's internal policy, which permits termination upon commission of a "serious offense" when continued employment would run against the interests of the organization. Docket No. 26-12 at 1. Plaintiff does not argue that the complaints were untrue, that the eight employees who came forward had any reason to lodge false complaints about her conduct, or that they were motivated by impermissible bias. *See generally* Docket No. 27. In light of the volume and consistency of the signed complaints received by defendant, plaintiff has not shown that defendant's actions violated company policy.

Third, plaintiff asserts that "a closer examination of these complaints demonstrates that any issues with Ms. Krzycki's behavior have been strongly

exaggerated." Docket No. 27 at 12. In support of this assertion, plaintiff relies in part on excerpts of deposition testimony from one of the employees who complained during the summer of 2010. *See id.* (citing Docket No. 27-6 at 3-4 (Lavoie dep., at 45, 48)). The employee in question testified that, at the time plaintiff allegedly made a nasty comment to him, he did not believe it was worth going to plaintiff's direct supervisor, although he did subsequently go to human resources to report the incident. Docket No. 27-6 at 3 (Lavoie Dep., at 45, ll.12-21). This testimony does not have any relevance to the other seven complaints, nor does it bear on "the facts as they appeared to the person making the decision" to terminate plaintiff and thus does not tend to show that defendant's stated reason is implausible or incoherent. *See Riggs*, 497 F.3d at 1119; *see also Anderson v. AMC Cancer Research Ctr.*, No. 06-cv-1999-JLK, 2009 WL 2219263, at *7 (D. Colo. July 24, 2009) ("In addition, more fundamentally, the question is not whether AMC's asserted reliance on the complaints was 'wise, fair, or correct; the relevant inquiry is whether [AMC] honestly believed its reasons and acted in good faith upon them.'") (internal citations omitted).

Rather, reading the employee complaints themselves is sufficient to demonstrate that defendant has not exaggerated the nature of the problems reported. For example, the complaints state that plaintiff and Mr. Record were "bullying everyone and they [were] all fed up with it;" Docket No. 26-9 at 3; that at least one employee felt that plaintiff and Mr. Record considered her a "target" whom they were watching and would attempt to get fired if she took action they perceived as negative, *id.* at 5; that plaintiff and Mr. Record whispered in the operating room and made people feel uncomfortable,

*id*. at 4; that plaintiff was a "troublemaker," *see id*.; that employees had "to walk on eggshells" and were "afraid" of plaintiff and Mr. Record, *see id*., *id*. at 12; that plaintiff and Mr. Record were making the work environment "horrible," *id*. at 5; that plaintiff tried to convince an employee that she was a "target" and was being watched because she had filed a complaint regarding Mr. Record's behavior, *id*.; that plaintiff and Mr. Record were "just nasty about everything," *id*.; that morale was "very bad," *id*. at 6, 10; that plaintiff and Mr. Record made "everyone feel stupid like they don't know what they are doing, . . . [said] whatever they want, . . . [were] belittling and [were] calling the surgical [technicians] 'amateur,'" *id*. at 10; and that an employee did not "like dealing with [plaintiff] because she [was] always so condescending," *id*. at 11. At least one employee cried while relaying her complaint to Ms. Bauer. *See id*. at 8; *see also* Docket No. 26-5 at 37-38 (Bauer dep., at 198, l.19 to 199, l.23). As these examples illustrate, there is no basis on the face of the documented complaints for inferring they were a mere smokescreen for an impermissible motivation.

Finally, plaintiff's most recent performance evaluation was issued on April 1, 2010 and concerned her performance during calendar year 2009. Docket No. 27-8 at 66. Plaintiff notes that she received a score of 19 out of 21 for her ability to "interact[] with patients, fellow employees, physicians, and other customers in a manner that encourages quality patient care, harmonious working relationships, positive customer relations, and which enhances the image and reputation of the facility," Docket No. 27-8 at 69, and argues that this positive evaluation demonstrates that defendant's reason was pretexutal. However, the complaints that defendant received during the summer of

2010 indicated that plaintiff's behavior had worsened or intensified over the past several months, prompting action on the part of colleagues who had declined to become involved before. See Docket No. 26-9 at 3, 4, 7, 8, 12 ("Tony walked in and said, 'Nicole, I'm too old for this and I've now been sucked in because we can't take it anymore.'"). Defendant's positive evaluation of plaintiff's 2009 job performance does not tend to show that defendant's decision to terminate plaintiff was based on anything other than the complaints received from plaintiff's colleagues during the summer of 2010, especially since those complaints highlighted a recent escalation in problematic conduct. See Anderson, 2009 WL 2219263, at *7 n.6 ("That [plaintiff] had previously received positive performance evaluations also has limited probative value on the question of pretext in light of the documented co-worker and client complaints made about [plaintiff] after these evaluations.").

As plaintiff "has not presented any evidence" that defendant "did not honestly believe the complaints [it] received or failed to act in good faith on them," she has not raised a genuine dispute of material fact as to whether the stated reason for her termination is pretextual. See id., at *7.

### B.  The Colorado Anti-Discrimination Act

Having determined that defendant is entitled to summary judgment on plaintiff's federal claim, the Court declines to exercise supplemental jurisdiction over her state law claim. See 28 U.S.C. § 1367(c)(3); Brooks v. Gaenzle, 614 F.3d 1213, 1229 (10th Cir. 2010) ("pendent jurisdiction over state claims is exercised on a discretionary basis and . . . if federal claims are dismissed before trial, leaving only issues of state law, the

federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.") (internal citations and alterations omitted).

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 26] is GRANTED in part.  It is granted with respect to plaintiff's first claim for relief.  Plaintiff's second claim for relief is dismissed without prejudice.  It is further

**ORDERED** that this case is DISMISSED.


DATED July 25, 2013.

                                    BY THE COURT:

                                    s/Philip A. Brimmer
                                    PHILIP A. BRIMMER
                                    United States District Judge